In re German SANCHEZ–CASIS d/b/a Medicenter Lab, Debtor.

McMANUS, STEWART, FERRARO & SCHWARZ, P.A., Plaintiff,

v.

Daniel L. BAKST, Trustee, Defendant.

Bankruptcy No. 88–04167–BKC–TCB. Adv. No. 89–0054–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

April 11, 1989.

**116**

Jeffrey H. Frank, Palm Beach Gardens, Fla., for plaintiff.

Ackerman Bakst and Lauer, P.A., Leslie Gern Cloyd, W. Palm Beach, Fla., for defendant.

## MEMORANDUM DECISION

### THOMAS C. BRITTON, Chief Judge.

Plaintiff requests a determination of the amount, validity and priority of its liens on the debtor's property. The defendant trustee has answered and seeks by counterclaim to set aside the security interests granted by the debtor to the plaintiff as avoidable postpetition transfers. The matter was tried on March 21. I now conclude that the subject liens are voidable by the trustee under 11 U.S.C. § 549(a).

The facts are generally undisputed. The subject liens were granted by the debtor after the involuntary petition was filed on October 17, 1988 and before the order for relief was entered on November 23. There is, therefore, no question that these transfers are voidable under § 549(a) and there is no question that they were all made during the so-called "gap" period between the involuntary petition and the order for relief.

The dispute is whether the transfers fall within the narrow exception from the provisions of § 549(a) which is provided under § 549(b) for some transfers during the gap period:

"In an involuntary case, a transfer made after the commencement of such case but before the order for relief *to the extent any value,* including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, *is given after commencement of the case in exchange for such transfer,* notwithstanding any notice or knowledge of the case that the transferee has." § 549(b). (Emphasis added).

The debtor signed an agreement to retain plaintiff's law firm on October 25, 1988, eight days after the involuntary bankruptcy petition was filed against him. He paid an initial retainer of $3,000 and agreed to pay a total amount of $20,000 for his future representation in the defense of a criminal charge. The liens which are in question here were assigned or transferred to plaintiff to secure payment for those future services.

The transfers include: (1) a security agreement covering a golf club membership certificate, two stock certificates, partnership interests, and of all of the debtor's other personal property; (2) two mortgages and notes for a total of $60,000 on two separate parcels; and (3) an assignment of mortgage and assignment of mortgage note. (CP 1 Ex. B Index to Documents).

Plaintiff has billed for and has been paid $8,285 for all services provided after the involuntary bankruptcy began and before the order for relief was entered 37 days later. This is significant because the order for relief terminated the debtor's right, under § 303(f), to use his property as though no involuntary petition had been filed. The trustee makes no claim for the $8,285 paid for the services received by the debtor dur-

ing the gap period. He challenges only the security for future services.

It is plaintiff's position that the debtor received the full value of all of plaintiff's promised future services the moment the employment agreement was signed and, therefore, it is entitled to retain its liens. I disagree.

 "Value" under § 549(b) requires proof of services *performed* not services *promised*, during the involuntary gap period. *In re Butcher*, 69 B.R. 198, 203 (Bankr.E.D.Tenn 1986) (payment to attorney during gap period for future services not within § 549(b) exception and are avoidable under § 549(a)).

The court said:

"There is no evidence nor documents establishing any services performed by him after June 24, 1983, the date the petition was filed. Thus Schledwitz has failed to establish that any value was given or any services were performed by him within the 'gap' period. The burden is upon him. This transfer may be avoided." *Id.*

Bankruptcy Rule 6001 places the burden of proof upon the transferee.

The obvious legislative purpose of § 549(b) is to give credit to a transferee to the extent that the bankrupt estate has received equivalent value for the transfer and, therefore, has not been depleted. That purpose is not served by the promise of possible future services to the debtor. Plaintiff's contention that a promise to provide future service is value "given" when the promise is made is not only inconsistent with the statutory language, it makes § 549(a) unenforceable.

Plaintiff relies upon *In re Brass Kettle Restaurant, Inc.*, 790 F.2d 574 (7th Cir. 1986), in which the court held that the equitable lien created by a contingent fee retainer agreement attached when the agreement was executed and, therefore, it did not constitute a transfer of the debtor's property on account of an *antecedent* debt under § 547(b). *Id.* at 576. The case neither involves nor discusses *when* the services or any other "value" was given in exchange for the lien, the sole issue before me. It is not in point.

I find that plaintiff has failed to establish its entitlement to liens on the debtor's property. B.R. 6001. The trustee is entitled to avoid the asserted liens under § 549(a).

As is required by B.R. 9021, a separate judgment will be entered declaring that plaintiff has no valid security interests against the debtor's property. The judgment in favor of the trustee shall avoid any and all transfers of security received by plaintiff. Costs may be taxed on motion.

DONE and ORDERED.