**In re WILLIAMS CONTRACT FURNITURE, INCORPORATED, Debtor.**

**Harry SHAIA, Jr., Trustee, Plaintiff,**

**v.**

**CONOCO, INCORPORATED, Defendant.**

Bankruptcy No. 90–33057–S.
Adv. No. 91–3154–S.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Aug. 25, 1992.

William A. Broscious, Hazel & Thomas, P.C., Richmond, VA, for plaintiff.

Deborah L. Fletcher, Hunton & Williams, Richmond, VA, for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court upon Harry Shaia, Jr.'s (the "trustee") complaint, filed on December 24, 1991, to avoid two post-petition transfers. The transfers, $1,784.69 and $1,261.51 respectively, were made by Williams Contract Furniture, Inc. ("debtor") to Conoco, Inc. ("Conoco"), the first being in the gap period after an involuntary Chapter 7 petition had been filed against the debtor and the second being after the order for relief had been entered. The trustee seeks to avoid the payments pursuant to 11 U.S.C. § 549(a) and recover

the payments from Conoco pursuant to 11 U.S.C. § 550(a). After considering the evidence, arguments of counsel and briefs submitted by the parties, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor, a wholesale and retail office furniture business, opened a commercial credit card account with Conoco to purchase gasoline and other petroleum products necessary for the operation of the debtor's business. On October 2, 1990, an involuntary Chapter 7 petition was filed against the debtor. On October 5, 1990, the debtor issued check No. 12646 in the amount of $1,784.69 ("first payment") to Conoco in payment of its outstanding account balance for September. The debtor's bank honored the check on October 10, 1990. On October 26, 1990, an order for relief was entered against the debtor. On October 30, this Court issued an order directing Dean Williams ("Williams"), principal of the debtor, to file the appropriate bankruptcy schedules, statements and lists pursuant to Federal Rule of Bankruptcy Procedure 1007(a)(2).[1] Williams stated he had been advised by counsel to continue to operate the business until the trustee in bankruptcy took over. He continued the operation of the business by receiving previously ordered furniture from manufacturers, making deliveries to purchasers and collecting accounts receivables.

Harry Shaia, Jr. was appointed as interim trustee on November 5, 1990 and became aware of his appointment a couple of days thereafter. Because Williams failed to comply with the order directing him to file the debtor's schedules, also under the advice of counsel, the Court entered an order on November 19, 1990 directing the petitioning creditors to file debtor's schedules, statements and lists pursuant to F.R.B.P. 1007(k).[2] The trustee in bank-

---

1. F.R.B.P. 1007(a)(2) states:
   (2) Involuntary Case. In an involuntary case, the debtor shall file within 15 days after entry of the order for relief, a list containing the name and address of each creditor unless a schedule of liabilities has been filed.

2. F.R.B.P. 1007(k) provides:

ruptcy has stated that he had no schedules with which to ascertain the nature of the business or the names of its officers nor did he make an effort to communicate with the debtor. Due to the delay in the filing of the schedules, Mr. Shaia was not aware of any assets in the debtor's bankruptcy case until November 26, 1990 when an employee of Ethyl Corporation contacted him regarding several accounts receivable which were held by Ethyl and owed to the debtor.

On December 6, 1990, the debtor issued another check, No. 12782, to Conoco in the amount of $1,261.51 ("second payment") for payment of the November outstanding account balance. This check was honored on December 12, 1990. An examination of the debtor pursuant to F.R.B.P. 2004 was conducted on December 30, 1990.[3] Schedules for the debtor were ultimately filed by the petitioning creditors on February 4, 1991. A meeting of the creditors pursuant to 11 U.S.C. § 341(a)[4] was scheduled for March 30, 1991, however a representative of the debtor failed to appear. Another meeting was scheduled for May 22, 1991 and Williams, on behalf of the debtor, attended. On December 24, 1991, the trustee initiated this proceeding against Conoco to avoid the debtor's two post-petition transfers to Conoco pursuant to 11 U.S.C. § 549(a). Conoco contends that value was given in exchange for the transfers and they are therefore unavoidable pursuant to § 549(b). Conoco also requests that the trustee be equitably estopped from maintaining these actions against Conoco because the trustee failed to adequately perform the duties imposed on him by Title 11.

## CONCLUSIONS OF LAW

11 U.S.C. § 549(a) permits the trustee to recover post-petition transfers made by the debtor. Section 549(a) provides that:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court

Unless the requirements of § 549(b) or (c) are met, the two transfers from the debtor to Conoco satisfy the requisite elements of § 549(a) and thus are avoidable post-petition transfers. Both transfers satisfy § 549(a)(1) because they occurred after the commencement of the case. The case commenced on October 2, 1990. The two transfers occurred on October 5 and December 6, 1990. Because the first payment occurred before the order for relief, it was authorized under § 303(f) thereby satisfying § 549(a)(2)(A). Section 303(f) permits a debtor in an involuntary Chapter 7 case to use, acquire or dispose of property during the involuntary gap period. The gap period is the time between the filing of the involuntary petition and the order for relief. 11 U.S.C. § 549(b). Section 542(c) does not apply to the debtor's first payment. The first payment was not authorized by any other section of Title 11 or by

(k) Preparation of Lists, Schedules, or Statements on Default of Debtor. If a list, schedule, or statement, other than a statement of intention, is not prepared and filed as required by this rule, the court may order the trustee, a petitioning creditor, committee, or other party to prepare and file any of these papers within a time fixed by the court. The court may approve reimbursement of the cost incurred in complying with such an order as an administrative expense.

3. F.R.B.P. 2004 provides in pertinent part:
(a) Examination on Motion. On motion of any party in interest, the court may order the examination of any entity.

(b) Scope of Examination. The examination of an entity under this rule or of the debtor (con't) under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

4. 11 U.S.C. § 341(a) states:
(a) Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.

any order of this Court.[5] Thus, the first payment may be avoidable because it satisfies § 549(a)(2)(A) and (B).

Because the second transfer was made after the order for relief it cannot be authorized under § 303(f). Section 542(c) is similarly inapplicable to the second transfer. Because the second payment was neither authorized under Title 11 or by an order this Court, it too may be an avoidable post-petition transfer under § 549(a).

Subsections (b) and (c) of § 549 are the only two defenses available to prevent recovery by the trustee of an otherwise avoidable post-petition transfer.[6] Subsection (c) involves transfers of real property to good faith purchasers and is inapplicable to the two transfers in question. Subsection (b) provides that:

> In an involuntary case, a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

Section 549(b) is to be construed as a "very narrow exception to the power of the trustee to avoid post-petition transfers" *In re 222 Liberty Associates*, 94 B.R. 381, 385 (Bankr.E.D.Pa.1988) rev'd. on other grounds, 110 B.R. 686 (E.D.Pa.1989). Section 549(b) also clearly indicates that value does not include payment of a pre-petition obligation. *In re Fort Dodge Creamery Co.*, 121 B.R. 831, 835 (Bankr.N.D.Iowa 1990); *222 Liberty Associates*, 94 B.R. at 384; *In re Brooklyn Overall Co., Inc.*, 57 B.R. 999, 1004 (Bankr.E.D.N.Y.1986).

The purpose of § 549(b) is to "protect contemporaneous exchanges for value to permit continued operation of the business during the 'gap' period." *Fort Dodge Creamery*, 121 B.R. at 835. The value exchanged for the transfer must be received by the debtor prior to or simultaneously with the transfer. *222 Liberty Associates*, 94 B.R. at 385. A debtor cannot, by definition, receive future services prior to the transfer. *Id.*

Conoco's assertion that the first payment falls within the exception provided by § 549(b) therefore fails for two reasons. First, the debtor's first post-petition payment was in full payment of the prior month's credit purchases. All charges on the September 27, 1990 statement were incurred before the filing of the involuntary petition on October 2, 1990, and the first payment was in an amount equal to

---

**5.** Although the issue was not raised by the parties, the Court recognizes that an argument could be made which asserts 11 U.S.C. § 363 as authority for the debtor to execute transfers in the ordinary course of business, in addition to the authority of the debtor to operate its business under 11 U.S.C. § 303(f). See *In re Fort Dodge Creamery Co.*, 121 B.R. 831, 830 (Bankr. N.D.Iowa 1990). There the court decided that the debtors' acts in an involuntary Chapter 7 were not in the ordinary course of business and therefore not authorized under § 363. The court further decided that the acts could only be authorized under § 303(f), and were consequently avoidable under § 549(a)(1) and (2)(A). If § 363 is to be used as authority for showing that the act was authorized under Title 11, it should be noted that § 363(b)(1) requires notice and a hearing if the transaction is not in the ordinary course of business and § 363(c)(1) would require court authorization under Chapter 7 pursuant to § 721 for transactions which were in the ordinary course of business. No such authority exists in this case. Consequently the only authority for the debtor's action in this case is § 303(f), irrespective of whether or not this debtor was in the process of liquidating its assets.

**6.** Conoco also raises the defense of equitable estoppel. Even if equitable estoppel applied, the trustee could not be estopped from avoiding all of the first and over half of the second payment because they occurred prior to the trustee's appointment as interim trustee, and therefore the trustee could not have made any representations which Conoco could have relied upon and which would have induced Conoco to continue its credit arrangement with the debtor at that time. This Court finds, however, that a strict reading of the law reveals that the elements of the doctrine of equitable estoppel are not present. See *In re Adkins*, 102 B.R. 485 (Bankr. E.D.Va.1989); *Levin v. Federal Land Bank of Baltimore*, 75 B.R. 248, 249 (E.D.Va.1987); *Trayer v. Bristol Parking*, 198 Va. 595, 95 S.E.2d 224, 231 (1956); *Hitt v. Cox*, 737 F.2d 421 (4th Cir. 1984).

that statement. Such a transfer in satisfaction of a pre-petition debt is an explicit exception to the defense of § 549(b). *222 Liberty Associates*, 94 B.R. at 384; *Brooklyn Overall*, 57 B.R. at 1004; *Fort Dodge Creamery*, 121 B.R. at 835.

■ Secondly, Conoco alleges that value was provided to the debtor in the form of an extension of credit which allowed the debtor to make purchases through the next billing cycle. Even if the Court were inclined to accept that the first payment was for value rather than payment of the pre-petition debt, which it is not so inclined to do, such value would not have been exchanged contemporaneously with the first payment. The exchange of value would have occurred, if at all, when future purchases of goods or services were charged. As was previously stated, the definition of future services dictates that such services could not have been received prior to or contemporaneously with the first transfer. *222 Liberty Associates*, 94 B.R. at 385. For the aforementioned reasons, the first transfer does not fall within the exceptions provided in § 549(b).

■ The second transfer will not be protected from avoidance because § 549(b) protects only those transfers made during the gap period, the time between the commencement of the case and the order for relief. The second transfer occurred on December 6, 1990 which was after the order for relief.

Section 549(b) does not provide Conoco with a defense to the trustee's actions to avoid the debtor's post-petition payments. Therefore, both of the debtor's post-petition transfers are avoidable pursuant to § 549(a) and the trustee may recover the transfers pursuant to § 550(a).[7]

■ From the evidence it appears that the debtor's purchases from Conoco were used by the debtor as actual and necessary expenses for the preservation of the estate which resulted in accounts receivable being delivered over to the trustee. Therefore, Conoco is entitled to an administrative expense under § 503(b)(1)(A)[8] in the amount of all unpaid purchases made after the filing of the involuntary petition. Subject to a possible surcharge prorated among all administrative expense creditors, Conoco may retain the balance of the second payment as an administrative expense. Consequently, Conoco should retain all of the second payment except for $49.60 (the total of two purchases in the amount of $35.10 and $14.50 occurring pre-petition on September 24, 1991), unless the estate's assets are later found to be insufficient.

For the aforementioned reasons, this Court finds that Conoco is liable to the trustee in the amount of $3,046.20 ($1,784.69 and $1,261.51) as a result of the avoidance of the debtor's post-petition transfers pursuant to §§ 549(a) and 550(a). This Court finds that the equities of this case do not require that the trustee be awarded interest or costs on the amounts avoided. Second, Conoco should be awarded an administrative claim in the amount of $1,211.91 for the actual and necessary expenses for preserving the estate after the commencement of the case.

An appropriate order will issue in conformity with this opinion.

### ORDER

This matter comes before the Court upon the complaint of Harry Shaia, Jr., Trustee

---

7. 11 U.S.C. § 550(a) is the prevailing statute that authorizes the trustee to recover property under § 549. § 550 states:
   (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

8. 11 U.S.C. § 503(b) states:
   (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
   (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions of services rendered after the commencement of the case;

in Bankruptcy, to avoid two post-petition transfers made by the debtor, Williams Contract Furniture, Inc., to the defendant, Conoco, Inc. For the reasons stated in the opinion of this Court this day entered, it is

ORDERED that the post-petition transfers to Conoco, Inc., in the amounts of $1,784.69 and $1,261.51, as represented by checks No. 12646 and 12782, respectively, be and hereby are avoided pursuant to 11 U.S.C. § 549 and recoverable by the trustee pursuant to 11 U.S.C. § 550. It is further

ORDERED that Conoco, Inc., be allowed an administrative expense in the amount of $1,211.91 pursuant to 11 U.S.C. § 503(b)(1)(A), the payment of which is to be retained by Conoco, Inc. out of the funds received from the aforementioned transfers, subject to a possible surcharge prorated among all administrative expense creditors.