# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CITIBANK (SOUTH DAKOTA) N.A.,
*Plaintiff-Appellant,*

v.

MICHELLE L. PARKER,
*Defendant-Appellee.*

No. 01-1211

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-00-1544-A, BK-99-14353, AP-99-1311)

Submitted: September 28, 2001

Decided: November 16, 2001

Before Before WILKINS,* NIEMEYER, and GREGORY,
Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Kevin M. Fitzpatrick, KEVIN M. FITZPATRICK, P.C., Fairfax, Virginia, for Appellant. Roy B. Zimmerman, Alexandria, Virginia, for Appellee.

*Judge Wilkins was assigned to the panel in this case but has since recused himself. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Citibank (South Dakota) N.A. appeals the district court's order affirming the bankruptcy court's order denying Citibank's objection to the discharge of Michelle L. Parker's credit card indebtedness with Citibank. Finding no error, we affirm.

## I

Citibank issued Parker a credit card in October 1998 with a credit limit of $8,500, and she remained current on her payments until October 1999. During that period, she generally charged approximately $2,000 per month on her account and paid approximately $1,500 per month. On May 27, 1999, Parker met with a bankruptcy attorney and hired him to prepare a Chapter 7 petition, which he eventually filed on August 26, 1999. During June 1999, Parker charged $2,080 on her Citibank card; she paid that balance in full in July. She charged an additional $651.66 to the account in July and $1,518.71 in August. After filing for bankruptcy, Parker continued to make payments on the account, paying $200 on August 28 and $64 on September 28.

Citibank objected to the discharge of Parker's indebtedness, under 11 U.S.C. § 523(a)(2)(A), contending that Parker charged purchases to her Citibank card in June, July, and August 1999 knowing that she would not be able to pay her bill and never intending to do so. In order to succeed on a claim under § 523(a)(2)(A), a creditor must establish the following elements: (1) a fraudulent misrepresentation,[1]

---

[1] In the context of credit cards, a cardholder's use of a credit card is treated as an implied representation to the credit card company that the cardholder intends to repay the debt. *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir. 2001) (en banc). The issue thus becomes whether that implied representation was fraudulent.

(2) that induces the creditor to act or refrain from acting, (3) in justifiable reliance on the misrepresentation, (4) causing harm to the creditor. *See Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999). If the creditor proves that the debt is consumer debt for luxury goods and establishes the other elements of 11 U.S.C. § 523(a)(2)(C), the burden of proving dischargeability shifts to the debtor. *See Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1092 (9th Cir. 1996).

At a hearing before the bankruptcy court, Parker testified that she intended to pay her credit card bill when she incurred the charges and that she had sufficient cash in her bank account and income from her husband's business to do so. She explained that when she incurred the charges, she did not realize that her credit card debt would have to be included in her bankruptcy petition. She stated further that when her credit card was canceled in October 2000, she telephoned Citibank to try to maintain her account and keep her debt from being included in her bankruptcy petition.

With one exception not relevant here, the bankruptcy court ruled that Citibank had failed to establish that the challenged charges were for luxury goods and therefore held that Citibank was not entitled to a presumption of nondischargeability. Nevertheless, the court assumed *arguendo* that Parker bore the burden of proving dischargeability and still granted the discharge, concluding that Parker had proven that she intended to pay her debt to Citibank when she incurred it and expected to be financially able to do so. The district court affirmed the order of the bankruptcy court on appeal.

## II

Citibank contends that the district court erred in affirming the finding of the bankruptcy court that Parker intended to pay the charges when she incurred them. "We review the decision of the district court de novo, effectively standing in its shoes to consider directly the findings of fact and conclusions of law by the bankruptcy court." *Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 745 (4th Cir. 1996). We therefore review factual findings of the bankruptcy court for clear error. *See id.*

We conclude that the finding that Parker intended to pay her bill for the challenged purchases was amply supported. Parker testified that she intended to pay the charges when she incurred them. And, her payment of the full $2,080 balance on the card in July, after she had already decided to file for bankruptcy, supports her contention that she was not intending simply to amass charges on her credit card before her bankruptcy filing and never pay her bill. The record also supports the finding that she believed she would be financially able to pay her credit card bills. We therefore conclude that the bankruptcy court's factual findings were not clearly erroneous.[2]

Accordingly, we affirm the district court's order affirming the discharge of Parker's debt to Citibank.

*AFFIRMED*

---

[2]Our determination that these findings were not clearly erroneous moots Citibank's other contentions.